Good afternoon, your honors. My name is Joe Green and I represent David Sahakian. I guess we've gone over the... we're in the afternoon, you're right. And I'd like to reserve five minutes for rebuttal. Racketeering comes in many shapes and sizes and covers a wide range of activities, and it doesn't help us at all in guiding us the underlying nature of the charges. I'm paraphrasing what the First Circuit had said in the case in U.S. v. Winter, where they found that the defendant was not a career offender for an underlying RICO conviction because this definition of RICO was so broad. Mr. Sahakian was charged with multiple VICAR acts and RICO and conspiracy to commit RICO. And right before... Well, why don't you jump right in and tell me what in the record supports your view that the jury could have considered gambling as a predicate racketeering activity when it considered count two of the indictment rather than murder and drug trafficking. Okay. The records replete with the judge. You start right off with the indictment itself. If you look at page seven and eight of the indictment, when it's identifying the nature of the RICO enterprise, it says that part of the activity for the Aaron Brotherhood was gambling and bookmaking. Then you start with the opening statements of the government, and then they again mention... What was he found guilty of? He was found guilty of conspiracy to commit RICO. And the elements of that charge, those four elements are specified. Was it count two? It was count two. And so if it was just count two and count two, I mean, the argument that the government makes is that count two refers only to multiple acts involving murder and distribution of controlled substances. And that was the only thing that was presented to the jury as predicate acts for count two. So the government says gambling might have been an overt act, gambling may have been mentioned during the trial, but there wasn't any possibility of confusion. I would challenge the government to prove that because the record is completely inconsistent with that. If you look at instructions number 40 and 41 that were given to the jurors on the four elements that they had to find for conspiracy to commit RICO, it doesn't mention those acts at all. So 41 I think it was says, for example, aiding and abetting murder. I mean, that refers only to the murder counts, right? The murder and the drug use. Is that 41? 41 further describes the scope of what the jurors are allowed to consider. 40 lays out the specific elements that the jurors are supposed to find, which is absent of the murders or the drug conspiracies. In fact, both 40 and 41 when read together say that the jurors are allowed to consider those things that are outside the indictment and that they're allowed to consider those things that even Mr. Sahakian are not even charged with. So the government says that gambling was never even identified to the jury as being a predicate act. Is that incorrect? I mean, I know there was testimony about gambling, but was it ever identified? This is another predicate act for a RICO conspiracy is participating in a gambling enterprise. Well, again, the government is wrong on that because if you look at, again, instructions 40 and 41. Well, the word gambling doesn't appear in those instructions, right? Well, in instruction number 40, the words murdering and controlled substance don't appear in the elements that the jurors were instructed. In fact, the government went out of its way to throw everything in this case to see what stuck, and specifically that the conspiracy count two is a lesser burden for the government. And 40 and 41, the instructions that were given to the jury, says exactly that. The only difference between count one, which had the racketeering acts and which gave the jurors an opportunity to convict Mr. Sahakian of distribution of drugs at Leavenworth in 1995, they did not convict him. They did not return the verdict. Did the government in closing argument or anywhere tell the jury that if they found Mr. Sahakian guilty of participating in a gambling act, that that could be a predicate act for RICO conspiracy for count two? They argued even broader than that. They said his mere thought, even just thinking, he doesn't have to do anything. The enterprise doesn't even have to exist. It doesn't even have to take off. His mere thinking of joining the enterprise is enough to convict him of conspiracy. And that's what the jurors did. And that's the heart of the problem with this case is that the instructions that were given to the jury, together with the evidence that was adduced, together with the closing arguments, made such a broad scope and minimized the threshold of what had to be proven to find him guilty of conspiracy to commit RICO, that the jurors convicted him on his thought. And we have to speculate as to what they relied upon as the predicate acts or the overt acts in which they decided. But we know, and we can look at the jury verdict that they returned on October 20th, where count one is listed with the racketeering acts in support of count one, which is the RICO charge, and it specifically says for them, do you find him guilty of distribution of narcotics at Leavenworth in 1995? And again, they were hung on that point, and they did not return a finding of guilt on that issue. So we know that that was not one of the acts that they could rely upon. So I'm looking at my notes, and maybe you can help me understand what happened at trial. And I've got, there were some seven predicate acts that were all either attempted murder, attempted murder of Burkett, conspiracy to murder Inman, murder of Ledger, Leger, then the conspiracy to distribute controlled substances, and then other conspiracies, whatever. And so in order to find the RICO conspiracy for count two, I understand that they would have to find, and they were instructed they would have to find predicate acts. And so I'm still just trying to understand how the jury was informed that they could rely on gambling. Because the instructions go further than just saying predicate acts. They say that you can even look at any of the evidence that was adduced at trial, and that you can find Mr. Sahakian guilty even if he's not named in the indictment. And you also can rely upon any of the evidence that was presented at trial that's in support of the indictment, that again, does not name Mr. Sahakian as one of the actors of that RICO charge. And so it gave them a broad berth on what they could consider, because it was emphasized that it's just the mere thought of joining a RICO enterprise that makes him guilty and nothing more. And that's the problem that we have with this case, is that we're forced to speculate as to what the jury given, all the evidence that was given to the jurors as to what the closing arguments were and what the indictment said, and how even Mr. Sahakian himself was cross-examined on the gambling aspect. Otherwise, why is that stuff relevant? It's relevant to prove the enterprise, which was one of the elements that the government has to meet with respect to count two, has to prove that it affected interstate commerce, and that Mr. Sahakian thought about agreeing to join that enterprise. Specifically, with respect to the career offender requirements, it's a three-pronged test. First, he has to be over 18 years old. The second one is that the instant offense has to be one of a crime of violence or a controlled substance offense. And third, that he was guilty of two or more prior felonies, either of a crime of violence or a controlled substance. With respect to the second prong is what we're focusing on. The instant offense was a conspiracy to commit RICO. It was not a controlled substance offense, and it was not a crime of violence. And even the government, at first, when the pre-sentence investigation report was returned, the probation officer said that it was a crime of violence. Mr. Sahakian filed his objections to that pre-sentence investigation report, arguing under the rule of lenity and under the definition of RICO, that it neither met the crime of violence nor did it meet the definition of a controlled substance. The government, at first, supported that it was a crime of violence, but then conceded in its reply brief that, in fact, the law didn't allow the court to consider that it was a crime of violence because it didn't meet the definition. And it exceeded the statutory maximum for the conspiracy to commit RICO, which is 20 years. And then, go ahead. I'm looking for my 4B1.1, but it's not in my notes here. But I thought in the comments section it says that conspiracy to commit a crime of violence is a crime of violence. But we don't have a conspiracy to commit a crime of violence here. So there's no conspiracy to commit a crime of violence? Not that Mr. Sahakian was convicted of, no. In the RICO offense? In the conspiracy to commit RICO. So it was conspiracy to commit RICO, and so the predicate offense, you're saying, is not a crime of violence? Not in this case, no, Your Honor. And why is that? Because the jury was allowed to roam wherever they wanted with respect to the evidence that was presented. Okay, so it's the same argument as the first one, which is that we don't know what the predicate offenses were. Is that? Because we don't have a special verdict for them. But what we do have is we have the count. So what you have is you've got the information of the indictment, and you have a general verdict. And we have all the arguments and the evidence that was adduced in the middle. And we have, with respect to the instructions, as I've already stated, we have an instruction that allows the jurors to roam over the entire case as to what they can rely upon to find them guilty of conspiracy. And numerous courts have found that the RICO statute is separate and apart from the underlying predicate acts. And even the probation officer in this case, when he was trying to calculate the sentencing guidelines, made reference in his pre-sentence investigation report that I can't look beyond the offense level of 19 for conspiracy to commit RICO because he acknowledged that the jury did not convict Mr. Sahakian of any of the predicated overt acts that were charged. And therefore, we were not allowed to speculate, and therefore, he couldn't enhance the offense level, recognizing that the jury found nothing more than conspiracy to commit RICO under the general verdict. Well, that same analysis applies when you're doing the career offender analysis, except that what's being confused here is what is the court allowed to consider for the instance offense as opposed to relevant conduct? If Judge Phillips wanted to consider the past criminal history of Mr. Sahakian for purposes of sentencing under the guidelines, of course, she's allowed to do that. But when it comes to defining what the instance offense is for purposes of a career offender finding to enhance the level from 19 up to 32, then she's limited in what was instructed to the jury and what the jury returned. If the jury would have been given a special verdict form and they would have found certain predicate acts, that would have helped further define. But under the rule of lenity, and even under the sentencing guidelines, we're not allowed to speculate as to what the jurors found. What's our standard of review for what the district court determined that the offense, the instance offense, was for the either murder or controlled substance? De novo. That's a de novo. And why is that? Because normally our review for the sentencing determination. I'm sorry, Judge, I missed the first part. Why is it de novo? What is the case that says that's de novo and is that the same context? Well, you have Rivera versus Garcia that I think was recently decided. You have Booker. There's a whole string of cases that I cited in my brief, but also that the Ninth Circuit has found with respect to. You have the Ankeny. Like I said before, Rivera versus Gomez. You have Contrell. You have Cardi. All these cases say that when it comes to procedural error in the calculations of the sentencing guidelines and that the review for the application of the sentencing guidelines that the court standard is a de novo review. Right, but we don't know if this is a procedure. Why is this a procedural error? Obviously the person was convicted of the Rigo offense. And so the district court is just applying the career offender guidelines. And the question is, is it a crime of violence? Why is that a procedure violation? Well, in this case, the government conceded that it was not a crime of violence in their replies to the objection to the PSR. So we don't have that at issue. What we have at issue is that once that was conceded, then the court went ahead and said, okay, it's not a crime of violence. They were only the count two only dealt with. I'm not kind of thinking that's exactly correct. What's that, Judge? Wasn't the judge trying to sentence higher than the maximum initially? Yes, she was. And wasn't that where the government was telling her, don't do that? That's correct, Judge. I don't think they're conceding. We'll have to ask them a question when we get over here, but I also see a head sort of going like this over here. Okay. It's one of, you know, I'm just reading body language. Okay. Well, Judge, you can, let's see, at the page, if you look at the footnote on page three of the, which is on page five of the volume three, it says the defendant is correct that without special verdict, it cannot be known whether jury convicted defendant of conspiracy to commit predicate acts of murder or drug trafficking or both. In its objection to the PSR, the government urged the court to make the determination for sentencing purposes. The government no longer believes that the court should do so. That's in their own documents and that's in their own filings. And again, it's supported again, that premise is supported again by the probation officer himself when he says that we're not allowed to speculate because the jury didn't find him guilty of any of the predicates. Do you want to save five minutes for rebuttal? I do, Judge. All right. Thank you. Say your name again. Every case is, get the microphone because we're recording. Stephen Wolf for the government, Your Honor. The sequence of events is as Your Honor recalls it, and I submit respectfully not as defendant Sahakian asserts it. The first question was whether the court could make a determination of what the crime had been that was the object of the conspiracy. And if it were a crime of violence, could the defendant involving murder, could the defendant get a level 43 under the guidelines or the like? And I think I did urge that that was okay until I read some cases and discovered that it wasn't and conceded that it wasn't. Because of the way the government expected that the special findings would come in the verdicts on count one. And I was too sanguine about what the verdicts would be. So it was not possible to determine whether the jury convicted the defendant of a crime of violence or a drug trafficking offense. But it's also not possible that they convicted him of anything else. Defendant says you can't speculate because the jury instructions, the evidence, the closing arguments allow the jury to go here and there. But the indictment doesn't. The defendant was found guilty of count two of the indictment, which allowed him to be convicted only if he had agreed to commit two acts, at least, that would amount to racketeering acts either involving murder or narcotics distribution. Did anyone ever argue that gambling would be sufficient to convict him on count two? No, Your Honor. Do any of the instructions say that? No, Your Honor. Judge Ikuda asked whether gambling was ever a racketeering act. No, there are no racketeering acts that involve gambling. It just doesn't sound like the two of you went to the same trial. Well, isn't it often that way, Your Honor? Well, not always. Sometimes people have their points of contention, but they seem to have gone to the same place. But here I'm hearing very different situations. I'll agree entirely with Defendant Sahakian that there were occasional references to gambling throughout the evidence. There were. But the question here is not what the jury heard, but what was the defendant convicted of? Because this is a sentencing argument. The question is, was the defendant convicted of a crime of violence or a narcotics trafficking offense? Right, but if the jury instructions had said you can convict him on gambling, that could be a predicate act. Then maybe you'd have some sort of variance with the indictment. I mean, what the opposing counsel is saying is the jury instructions just opens it up wide for the jury to imagine any sorts of acts they want and convict him of that. Your Honor, I submit that's not true. The instructions that are pointed to, 40 and 41, which are in the appellant's excerpts of record, they begin volume two. The court says in instruction number 41, the jury's verdict must be unanimous as to which type or types of predicate racketeering activity the defendant agreed would be committed. And then the examples are crimes of murder and drug trafficking. But by for example, can't you assume that there are other examples? Your Honor, I submit not if you're reading the indictment. After all, the question is can he be convicted of the indictment? And the indictment doesn't allow him to be convicted of gambling because it charged only crimes involving murder and narcotics trafficking. The instructions are read with the indictment, which I submit is the point of sending back the instructions and the indictment to the jury. The court was correct. I also differ with the defendant on what the standard of review is. The legal application of the guidelines may very well be de novo, but questions about the court's application of the undisputed guidelines to the facts it's sentencing are for abuse of discretion, and a review of the factual findings that the district court makes are for clear error. Well, for example, you have a situation where isn't, was there, had another enhancement too, correct? Which had to do with the perjury on the motion to suppress or something? Yes, Your Honor. So the court had looked at a video of that and decided that Mr. Sahakian was lying about planted evidence? Yes, Your Honor. Okay. And how do we review that, you're saying? The factual findings are for clear error. The application of the guidelines to the facts for abuse of discretion. Okay. The defendant didn't make much of that argument, but the point really was that the defendant said two things. I never had these documents. They're not mine. And the way they got into my cell is that they were planted there. And the government introduced evidence about both those points. One was the videotape that I had an opinion when I looked at it, but it doesn't count for anything. The judge looked at it and said, I don't see anyone planting anything. And moreover, the government showed that the document, which has a – this is Exhibit 1 at the Sahakian trial, Exhibit 258 and 260 at Bingham and Headley. There's a handwritten section that's a continuation of the type. And the government showed that with eight or nine examples of Sahakian's handwriting from admitted documents, that he wrote that handwritten edition so that the government essentially showed that you can look at the tape and see there's no planting, and he can't be correct that they're not his documents. He wrote them. I don't find that there's a great deal in the argument that calls for commentary beyond what's in the papers. I don't find that the opening argument really said much that isn't in the papers. It may be true that the government was lucky here, that the indictment only allowed conviction for a crime of violence or a drug trafficking offense. But the truth is that it's not a measure of the government's luck. It's a measure of whether the defendant received a fair trial or whether there's error that prejudiced him. And on these facts, thank goodness, there's not. Unless Your Honors have a question, I'll give up the rest of my time. We don't seem to have any additional questions. Thank you. Your Honors, Instruction Number 41 at the third paragraph begins, Moreover, the indictment need not specify the predicate racketeering acts that the defendant agreed would be committed by some member of the conspiracy in the conduct of the affairs of the enterprise. That's the broad scope in which the jurors were instructed in. And so the jurors were told that, yeah, you have the indictment, which the record will show that we objected to the jurors getting the indictment. In fact, we had a motion to strike surplusage that was denied. But nevertheless, the instructions went beyond that. It said the indictment was just one aspect of what's all been presented to you for you to consider. And in fact, if it doesn't specify a specific predicate act, you're free to roam and find one on your own given the evidence that was presented to you. And even the sentencing guidelines in their preamble have taken the position that we're no longer dealing with the surrounding circumstances of the offense itself. We deal with the charge itself. Because it gets too speculative when we're allowing courts to consider factors that maybe the jurors haven't considered. So we have to focus on the charge itself. And in this case, the definition of a conspiracy to commit RICO includes gambling. The indictment included gambling and bookmaking. The evidence did. The cross-examination and direct examinations of witnesses did. And it was referenced again on closing. With respect to the two-point enhancement for Mr. Sakin given testimony in the suppression hearing, obviously I have a philosophical problem with punishing somebody for exercising their Fifth Amendment right. But unfortunately, the United States Supreme Court in Dunnegan has said that it's something that can be contemplated and that it can be considered. It becomes difficult for a defense attorney when they're advising a client whether to take the stand or not, that you're compelled to tell them that even if you're telling the truth, it can come back and bite you later. And it chills the exercise of that Fifth Amendment right. And therefore, Dunnegan's... I honestly see that very often, though. I've never actually seen it before. Where a defendant took the stand? Well, no, no, no. I mean, I've seen a lot of perjury in my day from, you know, depending on, you know, when things are mutually exclusive, probably someone's not telling the truth. But I haven't seen the enhancement imposed very often. Right. And... I mean, you have a right to testify, but with that, when you raise your right hand, you're supposed to also testify truthfully. Right. And Mr. Sakin, and I think that's why the court focused more on his suppression testimony than he did his trial testimony, because he made a lot of admissions that were not in his best interest when he took the stand. But it gets us to the point, okay, Dunnegan says it's okay. Well, Dunnegan also gives us a guideline as to how it's supposed to be done. And if we're going to punish somebody for exercising the Fifth Amendment, right, and we find that there's a finding of perjury, we have to be more detailed in those specific findings. And that's what we're asking with respect to that point. And the last point I would just say is this, is that with respect to the statute of limitations, there was no opportunity for us, given reading the face of the indictment, to know that there was a statute of limitations problem until the point in time when Judge Phillips made her finding that the instant offense for finding Mr. Sakin a career offender was one of a prime of controlled substance that occurred in 1995. Before that, given that you have to have two racketeering acts in order to meet both RICO and conspiracy commit RICO, and that the 1995 act could have occurred with numerous criminal activities that were alleged in 1999 and 2000, on its face there was no issue of a statute of limitations problem until that moment in time when she made that decision. Thank you. All right. Thank you both for your argument. This case will stand submitted. The court is now on recess until tomorrow at 9 a.m. All rise. The court has decided to adjourn.
judges: Rymer, Callahan, Ikuta